UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ELLEN B.,[1] Plaintiff, | ) | |
| v. | ) | No. 1:26-cv-00155-MPB-MJD |
| FRANK BISIGNANO, Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Claimant Ellen B. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. § 423(d). For the reasons set forth below, the Undersigned recommends the District Judge **REVERSE** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB in May 2023, alleging an onset of disability beginning May 1, 2016. [Dkt. 8-2 at 27.] Claimant's application was denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Jody Odell ("ALJ") on January 28, 2025. *Id.* On February 26, 2025, the ALJ determined that Claimant was not disabled, and the Appeals Council denied Claimant's request for review on August 27, 2024. [*Id.*

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

at 2-4, 27-39.] Claimant timely filed her Complaint on January 26, 2026, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, and cannot perform her past relevant work but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, however, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

The Seventh Circuit recently set forth the proper standard of review in an appeal of the denial of disability benefits as follows:

> [W]e review the ALJ's decision deferentially, affirming if its conclusions are supported by substantial evidence. 42 U.S.C. § 405(g); *Deborah M.* [*v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)]; *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (ALJ's residual functional capacity determination "must be supported by substantial evidence in the record"). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 S.Ct. 1148, 203 L.Ed.2d 504 (2019), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). While we do not reweigh evidence, we conduct a critical review because a decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In addition, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. That logical bridge can assure a reviewing court that the ALJ considered the important evidence and applied sound reasoning to it. *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

*Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025). The Court will apply that standard in this case.

## III. ALJ Decision

At step one, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date on May 1, 2016. [Dkt. 8-2 at 29.] At step two, the ALJ found that Claimant had the following severe impairments: status post stroke, degenerative disc disease of the lumbar spine, and obesity. [*Id.*] At step three, the ALJ found that these impairments did not meet or equal a listed impairment during the relevant time period. [*Id.* at 32.] The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity to perform

> light work, as defined in 20 CFR 404.1567(b), except the claimant could frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and could occasionally climb ladders, ropes, or scaffolds. The claimant could never be required to work around unprotected heights or around moving mechanical parts or be required to operate a motor vehicle. The claimant was limited to frequent fingering with the non-dominant left upper extremity.

[*Id.* at 33.]

At step four, the ALJ found that Claimant had no past relevant work. [*Id.* at 37.] At step five, the ALJ found that Claimant could perform jobs that existed in sufficient numbers in the national economy, including "router," "price marker," and "cashier." *Id.* at 38. Accordingly, the ALJ concluded that Claimant was not disabled. *Id.* at 39.

## IV. Discussion

Claimant raises one issue for judicial review: whether the ALJ erred in performing the subjective symptom analysis.[2]

When assessing a claimant's subjective symptoms, an ALJ will complete a two-step process. First, the ALJ will "consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *3. Second, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established," the ALJ will "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* The ALJ will not evaluate an individual's symptoms based solely on objective medical evidence unless the objective medical evidence supports a finding that the claimant is in fact disabled. *Id.* at *4-5. The ALJ will consider factors including but not limited to the claimant's daily activities and the effectiveness of the claimant's medication or treatment. *Id.* at *7-8. The court must afford the ALJ's determination special

---

[2] Arguably, Claimant raises a second issue—whether the RFC adequately accounted for her chronic fatigue—but she raises that issue within the context of her subjective symptom analysis argument. [Dkt. 11 at 17-19.] In any event, the Court need not address whether the ALJ adequately incorporated fatigue-related limitations into the RFC because the subjective symptom analysis issue is dispositive and requires reversal.

deference, and it will only reverse if the ALJ's determination is patently wrong. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Here, the Claimant's subjective symptoms are described in multiple documents. In her function report, she stated that she is constantly fatigued and that inflammation sometimes causes stiffness and soreness that keeps her from moving around. [Dkt. 8-6 at 17.] Her left hand and arm hurt constantly due to a previous stroke. *Id.* She needs some assistance with shaving, putting on jewelry, and other tasks that would require her to use her left hand. *Id.* at 18. She is sometimes exhausted after bathing. *Id.* at 18. She is unable to clean the house in a way that is up to her previous standards, and she meal preps when she has energy so she will have food prepared when her energy is low. *Id.* at 20. She can drive locally but needs assistance for longer trips. *Id.* at 22. She enjoys spending time with others but is limited in doing so due to fatigue. *Id.* Vertigo affects her balance, and she has some eyesight trouble due to cataracts. *Id.* at 23.

At the administrative hearing before the ALJ, Claimant testified that she had to quit working due to frequent bouts of pneumonia arising from an IgA deficiency as well as chronic fatigue. [Dkt. 10-2 at 51, 53.] Her fatigue became worse after a stroke in 2017, and her frequent illnesses and medications also contribute to fatigue. *Id.* at 53. Since 2020, she tries to perform her daily activities during periods when she has "good energy," but after that, she needs to rest for an hour or two. *Id.* at 54. If she tries to push through the fatigue, "that's when the body pain, the aches and pains start and can lead to my body locking up, muscles tightening up on me." *Id.* (cleaned up). In aggregate, she has about three hours of "good energy" throughout the day. She has tingling from her shoulder blade to her fingertips and weakness in her left hand. *Id.* at 55. She has one or two episodes of vertigo each month. *Id.* at 56.

The ALJ discredited Claimant's description about the frequency and severity of her symptoms. [Dkt. 10-2 at 35-36.] In doing so, the ALJ explained:

> Despite her allegations, the claimant admitted she was able to drive herself around locally and could bath[e] and shower on her own. She also admitted she could do the grocery shopping, as long as she used a cart, and could carry the groceries from the car into her house. She testified she spent her days watching television and trying to read a little. The claimant reported she was trying to figure out what she was able to do with her medical conditions. The medical evidence shows the claimant's treatment was largely routine and conservative, and there is no mention of any significant or ongoing medication side effects. Though, I note she did report she worked her way up to 3900 mg of gabapentin but could not tolerate it because it made her too sleepy. Moreover, none of the claimant's treatment providers recommended any permanent work restrictions.
>
> . . .
>
> The record shows the claimant complained of severe fatigue and daytime hypersomnolence; however, she regularly presented to her treatment providers as alert, oriented, awake, and in no acute distress, and she demonstrated normal memory, normal attention and concentration, and normal speech and language. Nevertheless, I accounted for the claimant's allegations by limiting her to a range of light work, with no work around unprotected heights or around moving mechanical parts, and no operating a motor vehicle.

*Id.* (internal citations omitted).

Claimant argues that the ALJ "did not adequately explain how her very limited activities are inconsistent with her allegations of disabling pain, fatigue, weakness and balance." [Dkt. 11 at 13.] She argues that it was error for the ALJ "to rely on a perception of a lack of aggressive treatment absent evidence of accepted, appropriate treatment." *Id.* at 14. She argues that it was error to rely on a lack of work restrictions by medical providers when Claimant was not actually employed during the relevant time period. *Id.* at 15. And she argues there is no inconsistency between presenting as alert during visits with treatment providers and suffering chronic fatigue. *Id.* at 16.

The Commissioner argues that the ALJ considered all relevant evidence in the record and that weighing inconsistencies to arrive at a credibility determination of Claimant's subjective symptoms was a matter within her discretion. [Dkt. 12 at 3.]

Having considered the Parties' arguments, the Undersigned finds that the ALJ erred in conducting the subjective symptom analysis. The Commissioner is correct that the ALJ is entitled to deference in weighing inconsistencies in the record, but the ALJ did not explain how driving short distances, grocery shopping, watching television, or trying to read a little is inconsistent with the statements in Claimant's function report or her testimony at the hearing about the frequency or severity of her symptoms. Claimant reports that she has some limitations, such as pain in her left arm and hand, that are more or less constant, but that the primary reason for her inability to work is the fact that she only has short bursts of energy throughout the day before fatigue and other symptoms make further exertion impossible or aggravating. Having periods of limited exertion throughout the day is not inconsistent with her alleged symptoms. Similarly, being "alert and oriented" and having normal speech, memory, and attention during brief medical appointments is not inconsistent with Claimant's alleged symptoms.

Although conservative treatment is one factor among many that an ALJ may consider, the Undersigned notes that the Commissioner does not respond to Claimant's argument that an ALJ may not rely on her own lay interpretation of treatment levels or rely on conservative treatment where the record does not support a finding that more extensive treatments were available. *See* [Dkt. 11 at 14 (collecting cases).] It is well settled that "[f]ailure to respond to an argument—as the [Commissioner] ha[s] done here—results in waiver." *Rita Mary K. v. Kijakazi*, 2022 WL 17583780, at *5 (N.D. Ill. Dec. 12, 2022) (quoting *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). The ALJ did not identify any alternative treatments that might have been more

effective at treating Claimant's symptoms, nor did she rely on expert medical opinions in reaching a conclusion that more extensive treatment would be expected if Claimant's condition had been as severe as she alleged. These failings, coupled with the Commissioner's failure to respond to Claimant's argument on this point, demonstrate additional error in the subjective symptom analysis.

Similarly, the Commissioner does not respond to Claimant's argument that it was error for the ALJ to consider a lack of work restrictions in the medical record given that Claimant was not working during the period of alleged disability. *See* [Dkt. 11 at 15 (collecting cases).] As with Claimant's argument with respect to conservative treatment, the Commissioner has waived any response to her argument regarding work restrictions. Other courts have held that "[t]he absence of major work restrictions in [a claimant's] medical records does not illuminate the question of her credibility" when she was "unemployed throughout the time in question," *e.g., Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011), and the Undersigned finds those holdings persuasive here.

The ALJ also recites clinical findings from the consultative examination, in which Claimant was found to have normal gait, negative straight leg raise, no muscle atrophy, normal sensation, and intact fine and gross motor skills, but 4/5 strength in the lower extremities, tenderness in the left should and lumbar spine, and 4/5 grip strength on the left. [Dkt. 8-2 at 35.] The ALJ does not explain how these clinical findings are inconsistent with Claimant's primary reasons for seeking disability, chronic fatigue and an inability to work consistently throughout the day, and any such inconsistency is not apparent to the Undersigned.

Finally, the ALJ recites clinical findings from CT reports and an MRI report. *Id.* As with the clinical findings from the consultative examination, the ALJ offers no explanation of how

those imaging results contradict Claimant's alleged symptoms. What's more, the ALJ merely regurgitated hyper-technical language from the medical records—the significance of which no layperson could plausibly claim to understand without assistance from an expert. *See*, *e.g. id.* ("Magnetic resonance imaging (MRI) in August 2020 showed likely acute to subacute infarct involving the left lateral thalamus and adjacent posterior limb of the internal capsule with questionable trace petechial hemorrhage, negative for frank parenchymal hematoma or significant mass effect"). Courts have repeatedly found error when an ALJ attempts to interpret technical imaging results on their own, and the Undersigned similarly finds error in this case. *See McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("An ALJ may not conclude, without medical input, that a claimant's most recent MRI results are 'consistent' with the ALJ's conclusions about her impairments.")

For these reasons, the Undersigned finds that the ALJ erred in conducting the subjective symptom analysis and recommends that the ALJ's decision be **REVERSED** and the case **REMANDED** for further proceedings.

## V. Conclusion

For the reasons explained above, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the Commissioner's decision that Claimant was not disabled. Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections within 14 days of this Order will constitute a waiver of subsequent review, absent a showing of good cause for that failure.

SO ORDERED.

Dated: 21 SEP 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email